UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CANDICE ROWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-cv-4015-SLD-JAG |
| | ) |
| U.S. BANCORP AND U.S. BANK NATIONAL ASSOCIATION, | ) |
| | ) |
| Defendants. | ) |

ORDER

I.   INTRODUCTION

This action was filed by the Plaintiff Candice Rowe ("Rowe") against the Defendants U.S. Bancorp, Inc., and U.S. Bank, N.A. ("U.S. Bank"), a subsidiary of U.S. Bancorp and Rowe's former employer. Rowe seeks damages for wrongful termination alleging, *inter alia*, that U.S. Bank was motivated by unlawful discrimination under the Americans with Disabilities Act ("ADA"), interfered with her rights under the Family and Medical Leave Act ("FMLA"), and committed the common law torts of intentional infliction of emotional distress and retaliatory discharge. (Rowe's Compl., ECF No. 1.) Rowe alleges jurisdiction is proper in this Court because the action arises under 42 U.S.C. § 12101 *et seq*. (ADA) and 29 U.S.C. § 2601 *et seq*. (FMLA). Presently before the Court is U.S. Bank's Motion to Dismiss. (U.S. Bank's Mot., ECF No. 6.)

Based on the present allegations, and for the reasons set forth below, the Court finds that Rowe sufficiently stated a claim for FMLA interference under Count I and ADA discrimination

1

and retaliation under Counts III and IV. The Court therefore denies U.S. Bank's motion to dismiss those counts. The Court further finds that Rowe cannot obtain the punitive damages sought in Count V of the Complaint with respect to her FMLA and ADA retaliation claims and thus partially grants U.S. Bank's motion to dismiss that count.

As to Counts VI and VII, the Court finds that Rowe has not adequately stated a claim for relief under the common law torts of intentional infliction of emotional distress and retaliatory discharge. Thus, the Court dismisses Counts VI and VII.

## II. BACKGROUND

In July 2008, Candice Rowe was hired by U.S. Bank as a Teller in its Rock Island, Illinois branch. (Compl. 3-4.) She was promoted from Teller to Mortgage Opener in February 2010. (*Id.*) She claims that she received positive performance evaluations and enjoyed a good reputation among her colleagues during most of the two years she was employed at the bank. (Compl. at 2-3.) Rowe also asserts that she never required leave or special accommodations until May 2010, despite having been diagnosed with Multiple Sclerosis ("M.S.") in 2005. (Compl. ¶ 21.) Rowe's M.S. occasionally resulted in symptoms for which treatment or rest was required, but she did not disclose the existence of her condition to supervisors, Ms. Melinda O'Melia and Ms. Polli Townsend, before May 2010. (*Id.*)

Rowe contends that she received significantly different treatment from her supervisors after requesting six weeks of FMLA leave for a surgical procedure that would be scheduled sometime during mid to late July 2010. (Compl. at 4.) Specifically, Rowe alleges that she began receiving more criticism of her performance, less cooperation in completing her tasks, and, despite a heavy workload, was provided less clerical support than her coworkers. (Compl. at 5.) She also alleges that her supervisors cautioned her regarding her responsibility to guarantee the

success of an annual audit. (*Id*.) Rowe implies that her supervisors were motivated to warn her regarding the audit because if she failed it, O'Melia would be denied a bonus and Townsend would be denied a trip. (Compl. ¶ 27.)

Rowe states that she received a medical excuse from her physician on July 9, 2010, confirming that she was scheduled for surgery on July 20, 2010, with an anticipated return to work date of September 1, 2010. (Compl. ¶ 28.) Based on the surgery and anticipated recovery, Rowe initiated a Short Term Disability (STD) and FMLA claim with "the Hartford," presumably the company's insurance provider. (Compl. at 5.) Then, on July 18, 2010, one day before Rowe was to take her leave, Rowe was informed by O'Melia and Townsend that she was being terminated due to poor job performance. (Compl. ¶ 34.) Rowe was later informed on August 30, 2010, that the effective date of her termination was August 27, 2010, coinciding with the end of her leave. (Compl. ¶ 41.) After that meeting, Rowe was informed by letter that her STD and FMLA claims had been approved for leave from July 19, 2010 through August 26, 2010. (Compl. ¶ 34.) This approval was a few days short of her request for leave through September 1, 2010. (Compl. at 5.)

Rowe claims that before the August 26, 2010, expiration of her approved leave, she requested a leave extension to September 5, 2010. (Compl. ¶ 34.) She supported her request with a "Statement of Continued Disability" from her physician that indicated she could return to work with no restrictions on September 6, 2010. (*Id*.) But, the extension request apparently was not considered. (Compl. at 6-8.)

On September 17, 2010, Rowe filed a charge with the EEOC. (U.S. Bank's Mot. Ex. B, ECF No. 7.) The face of the charging document indicated that it was based on an allegation of "racial discrimination." (*Id*.) The EEOC decided to forego administrative enforcement of the

allegations and, as is customary in such circumstances, issued Ms. Rowe a "Right to Sue" letter on November 23, 2010, giving her the right to proceed against U.S. Bank in federal district court. (Compl. at 1-2.) On March 1, 2011, Rowe brought this action.

Now before the Court is U.S. Bank's Motion to Dismiss. U.S. Bank argues that Counts I, III, IV, V, VI, and VII of Rowe's Complaint are procedurally or substantively deficient, and therefore must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

III. DISCUSSION

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). "In reviewing a plaintiff's claim, the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). The plaintiff need not prove its claim in the complaint, but must include allegations sufficient to provide the defendant with "fair notice" of the claim and its basis. *See, e.g.*, *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Thus, a plaintiff must provide enough detail for the defendant to understand "what the claim is and the grounds upon which it rests, and, through [plaintiff's] allegations, show that it is plausible, rather than merely speculative, that [plaintiff] is entitled to relief."[1] *Tamayo*, 526 F.3d at 1083.

---

[1] Although Rowe takes issue with Defendant's formulation of the 12(b)(6) standard, the Court notes that the very proposition in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that Rowe cites as "well settled" was in fact abrogated by the landmark *Twombly* case in 2007.

A. Count I – FMLA Interference

Rowe's Complaint alleges that U.S. Bank interfered with and restrained her rights under the FMLA. (Compl. at 8-9.) To prove this claim, Rowe must show: (1) she was eligible for FMLA leave and protection; (2) U.S. Bank was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided notice of her intent to take leave; and (5) U.S. Bank wrongly denied her FMLA benefits. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011).

U.S. Bank's Motion to Dismiss contends that Rowe is not entitled to relief because she was not denied any FMLA benefits, a necessary element of her cause of action. The law on this issue is well established: "[w]here a plaintiff is not prevented from taking leave under the FMLA there is no interference." *De La Rama v. Ill. Dept. of Human Servs.*, 541 F.3d 681, 687-88 (7th Cir. 2008). U.S. Bank specifically relies on Rowe's own statement that "U.S. Bank did not actually terminate [Rowe] until August 26, 2010, *after her requested period of FMLA was completed*," to demonstrate Rowe was never denied FMLA leave. (Compl. ¶ 47 (emphasis added).) But it is evident from the context of the pleadings that when Rowe stated her termination date began after her requested period of FMLA was completed, she was referring to the *original* period granted, not to any extension requested. Based on the allegations in the Complaint, then, Rowe's claim does not hinge on being denied the leave that she received (July 19-26), but rather the time she was denied in connection with the requested leave extension (from August 26-September 5) and not receiving the full time originally requested (July 19-September 1). The requested extension was not considered even though she allegedly supported her request with a "Statement of Continued Disability" that applied through the requested time period. (*See* Compl. ¶ 41.) Hence, these allegations sufficiently allege that Rowe was denied

leave to which she was potentially entitled. U.S. Bank therefore has adequate notice of Rowe's claim and its request for dismissal of Count I is denied.

    B. Counts III and IV − ADA Discrimination and Retaliation

Next, U.S. Bank argues that Counts III and IV must be dismissed because Rowe failed to exhaust her administrative remedies. U.S. Bank supports this argument by attaching a copy of the charge document submitted by Rowe to the EEOC as an exhibit to the Motion to Dismiss. According to U.S. Bank, the charging document demonstrates that Rowe does not have the right to bring a disability discrimination claim in this Court because she did not identify such an allegation when she initially filed the charge with the EEOC.

It is true that a plaintiff who fails to file disability discrimination charges will usually be precluded from bringing such a claim in federal court. *Harper v. Godfrey Co.*, 45 F.3d 143, 147-148 (7th Cir. 1995); *Cheek v. Western & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994). However, failing to exhaust administrative remedies is not a jurisdictional requirement but an affirmative defense on which U.S. Bank bears the burden. *Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913, 922 (7th Cir. 2007). Thus, "[o]rders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). "Only when the plaintiff pleads [herself] out of court -- that is, admits all the ingredients of an impenetrable defense -- may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Id*.

Here, Rowe did not allege any facts sufficient to establish the affirmative defense of failure to exhaust administrative remedies in her Complaint, and she has otherwise satisfied all

that Rule 8 requires with respect to Counts III and IV.[2] *See* Fed. R. Civ. P. 8; *see also U.S. v. Northern Trust Co.*, 373 F.3d 886, 888 (7th Cir. 2004) (district court's dismissal under 12(b)(6) was "irregular" because a complaint states a claim "whether or not some defense is potentially available"). U.S. Bank argues in a footnote that the charge document showing evidence of Rowe's lack of administrative exhaustion should be considered by the Court in spite of not being attached to the Complaint because "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." (U.S. Bank's Mot. at 3.) As noted above, however, rebutting an anticipated affirmative defense is not central to Rowe's claim, at least not for the purposes of stating a valid claim under 12(b)(6). Therefore dismissal is inappropriate at this stage.

    C. Count V – Punitive Damages

U.S. Bank also seeks dismissal of Rowe's Count V request for punitive damages under the FMLA and ADA. As Rowe concedes in her response, punitive damages are not available under the FMLA. Moreover, the Seventh Circuit clarified in *Kramer v. Banc of America Securities, LLC* that punitive damages are available only for ADA discrimination (§ 12112) and not for ADA retaliation (§ 12203). 355 F.3d 961, 965 (7th Cir. 2004). The Court thus dismisses Rowe's request for punitive damages under the FMLA and ADA § 12203, but leaves intact her punitive damages claim under the ADA § 12112.

---

[2] This is not to imply that the EEOC's Right to Sue letter attached to the Complaint provides any proof that Rowe exhausted her administrative remedies, as she suggests. Rowe's assertion that the letter granted her a right to sue under the ADA because "on its face [the letter] states she has a right to sue under the ADA" is meritless. (Rowe's Resp. at 2.) The section to which Rowe cites is boilerplate language referencing *all* statutes -- including the Genetic Information Nondiscrimination Act, which has no relevance to Rowe's charge -- under which the EEOC has authority. It is in no way suggestive that Rowe was granted the right to sue under the ADA specifically.

D. Count VI – Intentional Infliction of Emotional Distress

U.S. Bank argues that Rowe's claim of intentional infliction of emotional distress ("IIED") should be dismissed because the type of acts she alleges are not "extreme and outrageous," an essential element of the claim. *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010). U.S. Bank further argues that even if she could establish extreme and outrageousness, the Illinois Human Rights Act preempts state law claims that seek redress of civil rights violations. The Court need not decide the issue of preemption because Rowe's allegations, even if true, do not rise to the objective standard necessary to sustain a claim of IIED.

Characterizing conduct as "extreme and outrageous" is a legal conclusion, but necessarily depends on the underlying facts of each case. *Hayes v. Illinois Power Co.,* 587 N.E.2d 559, 563 (Ill. App. Ct. 1992). "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities" are not enough to give rise to liability; rather, the conduct must "go beyond all bounds of decency." *Id*. (internal quotation marks omitted). The plaintiff must show the defendant's conduct was objectively extreme and outrageous even under liberal notice pleading standards. *See Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 623-624 (7th Cir. 1989) (affirming district court's dismissal of IIED claim where plaintiff alleged she was removed from her seat on a plane, constrained in the cockpit, and accused of being a terrorist because the allegations did "not rise to the level of extreme and outrageous conduct").

In the employment context, courts require an employer's conduct to be "truly egregious" to support an IIED allegation. *Lewis v. School District # 70,* 523 F.3d 730, 747 (7th Cir. 2008). Courts will, however, consider the position of authority held by an employer-defendant over an employee-plaintiff when evaluating whether particular conduct is, as a matter of law, extreme and outrageous. *Id*. But as the Seventh Circuit succinctly recognized, "employers often and

8

necessarily take actions during the course of business that result in emotional distress," and this will at times include criticism, discipline, and termination. *Lewis v. School District # 70* at 747 (finding that such actions "cannot be classified as extreme and outrageous unless they go well beyond the parameters of the typical workplace dispute.")

It is evident that none of the facts Rowe alleges support her allegation that U.S. Bank acted outrageously, and thus she fails to state a viable claim for IIED. In her Complaint, Rowe alleges that U.S. Bank's conduct "regarding work duties, performance expectations and review, training, and clerical support and lack of effective communication" are enough to constitute extreme and outrageous behavior. (Compl. ¶ 27.) However, this appears to be nothing more than the sort of conduct one would expect in the ordinary course of an employer-employee relationship. That is not to say that Rowe did not find such interactions uncomfortable. But employers often need to take actions that are stressful and unpleasant for an employee, such as criticizing their job performance, and should be afforded the ability to properly exercise those rights despite resulting emotional distress. *See, e.g.*, *Ulm v. Memorial Medical Center*, --- N.E.2d ---- (Ill. App. Ct. 2012). Rowe argues that her claim of outrageous conduct is supported by her supervisors' warnings to her that they would miss a company sponsored trip if Rowe took her leave. (Mem. in Opp'n at 3.) Untactful though it may be, this is not the sort of extreme and outrageous behavior to support an IIED claim under Illinois law. Courts in Illinois have dismissed claims based on conduct far more odious than that alleged by Rowe. *See, e.g.*, *Harriston v. Chicago Tribune Co*., 992 F.2d 697, 702-703 (7th Cir. 1993) (plaintiff's allegations that her employer prevented her from supervising two white subordinates, reprimanded her without reason, forced her out of her management position, excluded her from office activities, ignored her concerns for property and personal safety after her vehicle was vandalized on

company property, eavesdropped on her telephone calls, and levied false performance accusations did not reach the level of extreme and outrageous conduct needed to establish claim for IIED because it did not go beyond all bounds of decency, thus affirming district court's dismissal). Because Rowe does not allege any acts to plausibly support a claim of IIED, the Court dismisses Count VI.

    E. Count VII – Tort of Retaliatory Discharge

U.S. Bank argues that Rowe's claim of retaliatory discharge should be dismissed because Rowe cannot show that she was discharged in violation of a clear mandate of public policy, an essential element of the tort. In Illinois, retaliatory discharge has the following three elements: (1) the employer discharged the plaintiff; (2) the discharge came in retaliation for her activities; and (3) the discharge violates a clear mandate of public policy. *Webber v. Wight & Co.*, 858 N.E.2d 579, 592 (Ill. App. Ct. 2006). As to the third element, the Illinois Supreme Court has stated that public policy concerns "what is right and just and what affects the citizens of the State collectively." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 877–79 (Ill. 1981). The matter "must strike at the heart of a citizen's social rights, duties, and responsibilities." *Id.* at 878-79. A claim for retaliatory discharge will be denied, then, if only private interests are affected. *Sullivan v. Progressive Cas. Ins. Co.*, 2004 U.S. Dist. LEXIS 14322, at * 15-16 (N.D. Ill. July 27, 2004).

This Court agrees with the conclusion of other district courts in Illinois that the FMLA does not involve matters that strike the heart of a citizen's social rights, duties, and responsibilities. *Sallis v. Prime Acceptance Corp.,* 2005 WL 1950661, at *3 (N.D.Ill. Aug.10, 2005); *Dormeyer v. Comerica Bank—Ill.,* No. 96 C 4805, 1998 WL 729591, at *5–6 (N.D.Ill. Oct. 14, 1998), *aff'd,* 223 F.3d 579 (7th Cir. 2000). At its root, the interests that Rowe relies on

affect only her private relationship with U.S. Bank; they do not affect the concerns that satisfy a public policy claim. *See Handel v. Belvedere USA Corp.*, 2001 WL 1286842, at *4 (N.D. Ill. Oct. 22, 2001) ("the FMLA was designed to balance the employer's legitimate interests with the needs of employees in obtaining leave for certain medical conditions and family reasons and, therefore, affects only the private relationship between an employee and an employer"). The public is simply not affected by this dispute.

Rowe nonetheless argues that the personal health and welfare of an individual, and the right to undergo medically necessary procedures, constitutes a public policy goal of the State. However, Rowe does not identify any case or law supporting this contention. Nor has she provided any other authority finding that the tort of retaliatory discharge should be expanded to include claims alleging termination for exercising rights granted by the FMLA.[3] On the contrary, other courts in Illinois have uniformly rejected this very proposition. *Sullivan*, 2004 U.S. Dist. LEXIS 14322 at *15-16; *Sallis*, 2005 WL 1950661 at *3; *Hamros v. Bethany Homes and Methodist Hosp. of Chicago,* 894 F.Supp. 1176, 1179 (N.D. Ill. 1995). If such activities relating to an individual's *personal* health and economic interests were held to implicate public policy, there is no end what common law retaliatory discharge could embrace. The Illinois Supreme Court has mandated that retaliatory discharge is meant to be a narrow exception to at-will employment principles, *Balla v. Gambro, Inc.,* 584 N.E.2d 104, 107 (Ill. 1991), and this Court will not disturb that position. Because Rowe is unable to establish the third element of her retaliatory discharge claim, Count VII is dismissed.

---

[3] Indeed, as Count II of Rowe's Complaint make clear, the FMLA already prohibits and provides a remedy for retaliation, thus providing its own protection.

11

F.  Claims Against U.S. Bancorp

Finally, U.S. Bank argues in its motion that U.S. Bancorp, included as a defendant in Rowe's Complaint, is not a real party in interest to this lawsuit because it is a separate corporate entity.  If Rowe can establish a corporate relationship sufficient to warrant imposing liability on U.S. Bancorp, she will have the opportunity to amend her Complaint.  But as is, Rowe has asserted no facts to support a claim against U.S. Bancorp and her claims are therefore dismissed against it.

IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS U.S. Bank's motion to dismiss Counts VI, VII, and the FMLA and ADA retaliation components of Count V, and DENIES its motion to dismiss Counts I, III, and IV.

Entered this 6th day of March, 2012.

s/ Sara Darrow  
SARA DARROW  
UNITED STATES DISTRICT JUDGE