UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CANDICE ROWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-cv-04015-SLD-JAG |
| | ) |
| U.S. BANK NATIONAL ASSOCIATION, | ) |
| | ) |
| Defendant. | ) |

ORDER

Candice Rowe alleges that her former employer, U.S. Bank National Association ("U.S. Bank"), violated her rights under the Family and Medical Leave Act and the Americans with Disabilities Act. U.S. Bank moved for summary judgment, which the Court hereby grants for the reasons set forth below.

**BACKGROUND**

The following facts are recounted in the light most favorable to Rowe, the nonmovant.[1]

U.S. Bank, a national banking association doing business in the State of Illinois, hired Candice

---

[1] As a preliminary matter, Rowe failed to comply with Local Rule 7.1(D)(2)(b) in responding to U.S. Bank's Statement of Undisputed Material Facts. Resp. to Mot. for Summ. J. at 3-9, ECF No. 28. Rowe lists as "disputed" many facts for which she has put forth no documentary evidence showing that such facts are actually in dispute. Instead, Rowe erroneously believes that a fact is "disputed" simply because it evades her memory. *See Posey v. Skyline Corp.*, 702 F.2d 102, 105-06 (7th Cir. 1983) (plaintiff's affidavit that she "did not recall" ever seeing a notice of employees' ADEA rights was "insufficient to create a question of fact" as to whether employer actually posted the notice). For example, in response to U.S. Bank's Undisputed Material Fact 29, regarding a meeting between Rowe and her supervisor Melinda O'Melia, Rowe claims that the meeting's contents are disputed because "Plaintiff stated she had no recollection of any meeting . . . ." ECF No. 28, at 4.) Rowe also disputes facts that she admitted in her deposition, and answers many of U.S. Bank's facts with nonresponsive conclusions and arguments that find no support in the record. Further, Rowe mischaracterizes several facts as "immaterial" without

Rowe as a bank teller in its Rock Island branch in July of 2008. Compl. at 2-3, ECF No. 1. In October 2009, Rowe submitted an internal application for the position of Mortgage Opener. *Id.* at 3. She was interviewed by Regional Operations Manager Melinda O'Melia, who recommended Rowe for the position. O'Melia Decl. at 2, ECF No. 26-3. Rowe was offered the job on February 11, 2010, and she began work on March 1 of that year as the sole Mortgage Opener in the Rock Island branch. Compl. at 3. She received about one week of training from the outgoing Mortgage Opener, Valerie Caulkins. Rowe Dep. at 62, ECF No. 26-1.

As a bank teller, Rowe was consistently reviewed as a solid performer. *Id.* But soon after she began the position of Mortgage Opener, her supervisors noted improvements that needed to be made. On March 31, 2010, Regional Manager Polli Townsend met with Rowe and issued her a Performance Improvement Plan (PIP) detailing Rowe's performance deficiencies and necessary adjustments. ECF No. 26-2, at 8. The PIP listed the following problems with Rowe's performance: mismarking files, distributing files to the wrong processors, misplacing documents, failing to retain necessary copies, failing to familiarize herself with RESPA (Real Estate Settlement Procedures Act) and MDIA (Mortgage Disclosure Improvement Act) materials, failing to comply with MDIA procedures, overcharging clients, and not verifying mailings. *Id.* Rowe did not dispute any of the concerns raised in the PIP, and she understood that her failure to make the necessary improvements could lead to termination. Rowe Dep. at 65-77.

When Rowe began work as a Mortgage Opener, her immediate supervisor Melinda O'Melia was out of the office on maternity leave under U.S. Bank's FMLA (Family and Medical Leave Act) leave policy. O'Melia Decl. at 2. Because O'Melia was on leave until late May

---

providing any reasons why. The Court therefore deems all of U.S. Bank's facts as undisputed and material, except for 39 and 40.

2010, she had no role in the issuance of Rowe's PIP. *Id.* Upon her return to work, though, she too noticed numerous problems with Rowe's job performance. *Id.* Between May and July 2010, O'Melia observed that Rowe was not familiar with RESPA and MDIA procedures, did not comply with file audit procedures, failed to obtain signed authorizations and copies of tax returns, did not deliver completed forms to loan processors and loan officers, failed to put files into the system the day they were received, and did not provide O'Melia with a list of incomplete files as requested. *Id.* at 2-3. She communicated her concerns to Rowe via email and in person on June 10, June 17, July 6, and July 8, 2010. *Id.*; ECF No. 26-2, at 9-13; ECF No. 30-1, at 1. Rowe did not dispute any of O'Melia's observations about her performance deficiencies. Rowe Dep. at 96. Rowe's job performance did not improve, and on July 16, 2010, O'Melia and Townsend met with Rowe and advised her that she would be terminated as of July 26. *Id.*

During the above time period, Rowe was also going through the process of requesting leave time from U.S. Bank. When O'Melia returned to work at the end of May, Rowe advised her that she was scheduled for surgery on July 20, 2010, to remove non-cancerous cysts and that she would be out for approximately six weeks. Rowe Dep. at 81-82; O'Melia Decl. at 2. (This surgery was unrelated to another medical condition Rowe had, Multiple Sclerosis. Rowe Dep. at 102.) Rowe volunteered that she did not want to be out for the full six weeks, and O'Melia agreed that six weeks was a long time to be gone and suggested Rowe speak with her doctor to see if her leave could be shorter. Rowe Dep. at 143; O'Melia Decl. at 2. On July 9, 2010, Rowe submitted to O'Melia a medical excuse from her physician regarding her planned surgery. ECF No. 26-2, at 14; Rowe Dep. at 111-112. O'Melia told Rowe to submit her leave request to Deborah O'Malley in U.S. Bank's Human Resources, which she did. Rowe Dep. at 112. On July 12, 2010, Rowe provided O'Malley with a medical excuse from her physician requesting

medical leave from July 20 until August 31, 2010.  ECF No. 26-2, at 14.  O'Malley in turn referred Rowe to The Hartford, U.S. Bank's third-party leave administrator, who contacted Rowe's physician and approved Rowe's leave and short-term disability benefits from July 19 through August 26, 2010.  ECF No. 26-2, at 15.  The Hartford also told Rowe that if she remained disabled beyond August 26 she must have her physician's office contact The Hartford to provide a medical update.  *Id.*  The Hartford sent two more letters, dated August 3 and August 20, 2010, that confirmed Rowe's leave dates and further advised her to notify her manager and The Hartford immediately if she needed to extend her leave.  ECF No. 26-2, at 17-22.  The August 20 letter specifically informed Rowe that her failure to provide notification of her intent to delay her return date within 15 days could result in the loss of the protections afforded her by the FMLA.  *Id.* at 21.  Rowe understood that her leave ended on August 26 and that further action was necessary to extend it.  Rowe Dep. at 116.  In addition, on August 30, 2010, Deborah O'Malley advised Rowe that her termination would be effective on August 26, 2010, the day after her FMLA leave ended.  *Id.* at 120.  (Rowe was notified of her termination on July 16, 2010, but the fact that U.S. Bank did not officially terminate her until August 26, 2010, enabled Rowe to still obtain her medical leave despite being fired a month earlier.)

On August 26, 2010—the last day of her approved leave time—Rowe called The Hartford to request an extension of her medical leave to August 31.  ECF No. 26-4, at 3.  The Hartford faxed an Attending Physician Statement of Continued Disability to Rowe's physician, and advised Rowe that the medical documentation needed to be received within 15 days.  *Id.* at 3-6.  Rowe received the Attending Physician Statement on August 31, 2010, but she did not mail it to The Hartford and did not confirm that her physician had done so either.  ECF No. 26-2, at 23; Rowe Dep. at 118-120.  Her physician did not mail the Attending Physician Statement to The

4

Hartford because Rowe had not signed it. ECF No. 26-2, at 24. On October 7, 2010, The Hartford sent Rowe another letter notifying her that she was ineligible for FMLA leave beyond August 26, 2010, because she had not provided the required medical documentation within 15 business days, but Rowe cannot recall doing anything in response to that letter. ECF No. 26-2, at 25; Rowe Dep. at 124. Rowe received her FMLA leave from July 19 through August 26, 2010, and her effective termination date was August 27, 2010. Rowe Dep. at 20.

In early September 2010, Rowe (who is African American) contacted the EEOC to submit a claim of racial discrimination arising out of her termination from U.S. Bank. Rowe Dep. at 40-41. Rowe believed race was the motive for her termination because a Caucasian worker, Valerie Caulkins, received more favorable treatment than she did. *Id.* Specifically, Rowe was under the impression that U.S. Bank had provided Caulkins with a temporary worker to assist with her tasks, and Rowe thought that U.S. Bank had discriminated against her by not providing her a temp as well. *Id.*; 86-87. (Rowe did not affirmatively request assistance with her work from her supervisor Melinda O'Melia until July 8, 2010, about a week before her termination. O'Melia Decl. at 4.) Based on this, Rowe called the EEOC and, after listening to a recording of options, selected the option for race. *Id.* at 41-42. The EEOC sent Rowe a packet of materials to complete. Rowe filled out and returned an official Charge of Discrimination in which, under the section "Discrimination Based On," she checked the box for "Race" (but not the box for "Disability"). ECF No. 26-2, at 3. Under the section "The Particulars Are," Rowe wrote: "I began employment with Respondent on or about July 22, 2008, and my most recent position was Mortgage Opener. During my employment, I was disciplined. I was discharged on July 16, 2010. I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* Rowe received a letter

5

from the EEOC dated September 17, 2010, confirming that her discrimination charge was being brought under Title VII of the Civil Rights Act of 1964. ECF No. 26-2, at 4-5. On November 23, 2010, the EEOC issued Rowe a right-to-sue letter based on her claim of racial discrimination. *Id.* at 7. Rowe never told the EEOC, either in her written complaint or verbally, that her disability, medical condition, or need for surgery had anything to do with her termination. Rowe Dep. at 41, 51. She also never personally amended her EEOC complaint to include a charge of discrimination under the ADA, nor did she have any personal knowledge of her attorney amending her complaint. *Id.* at 49-50.

On March 1, 2011, Rowe commenced the present action by filing her Complaint in this Court. ECF No. 1. Her Complaint alleged causes of action for interference and retaliation under the FMLA; discrimination and retaliation under the ADA; punitive damages under the FMLA and ADA; intentional infliction of emotional distress; and retaliatory discharge. In its Order dated March 6, 2012, the Court dismissed Rowe's intentional infliction of emotional distress and retaliatory discharge claims. *See* ECF No. 15. The Court also dismissed Rowe's request for punitive damages under the FMLA. The only remaining counts are Count I (FMLA interference), Count II (FMLA retaliation), Count III (ADA discrimination), Count IV (ADA retaliation), and Count V (punitive damages as to Rowe's ADA claims). On February 13, 2013, U.S. Bank filed its Motion for Summary Judgment (ECF No. 25) to which Rowe filed her Response on March 11, 2013 (ECF No. 28).

## DISCUSSION

**I.  Legal Standard for Summary Judgment**

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted). A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial; there is a genuine issue for trial if there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). There can be no genuine issue as to any material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**II.     Rowe's FMLA Claims**

The Court first addresses Rowe's claims under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654. The FMLA entitles an eligible employee suffering from a serious health condition that renders her unable to perform the functions of her position to twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(D). The parties do not dispute that Rowe was entitled to leave from July 19, 2010, to August 26, 2010; instead, their argument is over an additional week of leave (August 27-September 5, 2010) that Rowe claims she was entitled to but did not receive. In addition to providing for leave time, the FMLA prohibits

7

employers from interfering with or discriminating against an employee who attempts to exercise her rights under the FMLA. 29 U.S.C. § 2615(a)(1)-(2). It is Rowe's claims of FMLA interference and retaliatory discharge that are at issue here.

### A. FMLA Interference

Count I of Rowe's Complaint alleges FMLA interference in violation of 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."). As previously discussed, Rowe actually received leave time from July 19, 2010, to August 26, 2010, so her interference claim is based entirely upon the fact that she did not receive a leave extension from August 26 to September 5, 2010. To prevail on her interference claim, Rowe need only demonstrate that U.S. Bank denied her leave under the FMLA; discriminatory intent on the part of the employer is not required. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). To make out a claim of FMLA interference, Rowe must show that (1) she was eligible for FMLA protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Id.* (citing *Hoge v. Honda Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004)).

As to the first element, Rowe was not eligible for the protections afforded by the FMLA during the August 27-September 5, 2010, period because she was not employed by U.S. Bank. *See* 29 U.S.C. § 2611(2)(A) (defining "eligible employee"). The FMLA only entitles an employee to the same position she would have been otherwise entitled to had she not taken her leave. 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216; *Harrell v. U.S. Postal Serv.*, 445 F.3d

913, 919 (7th Cir. 2006). Had Rowe not taken leave, she still would have been terminated as of August 26, 2010, and would therefore not have been protected by the FMLA. The fact that Rowe was on FMLA leave in the weeks immediately prior to her effective termination date does not provide her with a right of restoration to her previous employment. *Id.*; *Daugherty v. Wabash Center, Inc.*, 577 F.3d 747, 750 (7th Cir. 2009). (Of course, this begs the question of whether Rowe's termination as of August 26, 2010, was legitimate. It was, for reasons fully discussed below.)

The second element above is undisputed, so the Court can move onto the third issue, that being whether Rowe was entitled to FMLA leave between August 27 and September 5, 2010. U.S. Bank asserts that Rowe was not entitled to FMLA leave because she failed to provide required certification of her serious health condition.[2] An employer may require that an employee's leave request be supported by a certification issued by the employee's health care provider. 29 C.F.R. § 825.305(a). The burden to produce the certification is on the employee: if the employee fails to comply, the employer may deny the taking of FMLA leave. 29 C.F.R. § 825.305(d). There are some caveats, though: the employer must advise the employee of the anticipated consequences of the employee's failure to provide adequate certification, and must give the employee a reasonable opportunity to cure any deficiencies in the certification. 29 C.F.R. § 825.305(c)-(d).

Here, Rowe received numerous warnings from The Hartford that, in the event Rowe desired a leave extension, she was to have her physician provide The Hartford with a medical

---

[2] An employee is generally entitled to FMLA leave if she can demonstrate that she suffers from a "serious health condition" that prevents her from fulfilling the functions of her job. 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves (a) inpatient care in a hospital, hospice, or residential medical care facility; or (b) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). U.S. Bank does not dispute that Rowe's scheduled surgery constituted a "serious health condition."

update. The only action Rowe took was to call The Hartford to request additional leave time. Following the call, The Hartford immediately faxed an Attending Physician Statement of Continued Disability to Rowe's physician, which was never returned because Rowe failed to consent to its release. Rowe also received an email from U.S. Bank on August 30 notifying her that her termination date was August 26, 2010, as well as a letter from The Hartford dated October 7, 2010, advising her that her FMLA leave had ended on August 26, yet she did nothing to follow up on her request. Rowe does not dispute that she was aware of her obligations to provide the required certification. Her only defense, aside from various allegations and conclusions that lack any evidentiary support, is that she presumed her doctor had faxed the Attending Physician Statement back to The Hartford. This is insufficient, for it is the employee's responsibility—not her physician's or her employer's—to furnish adequate certification regarding her request for leave. *See* 29 C.F.R. § 825.305(d); *Ridings v. Riverside Med. Ctr*, 537 F.3d 755, 768-69 (7th Cir. 2008). In addition to repeatedly advising Rowe of her duties to produce the requested certification and giving her ample opportunity to cure the deficiencies, The Hartford also made perfectly clear that Rowe's failure to do so could result in the loss of her FMLA protections. *See* 29 C.F.R. 825.305(c)-(d). Accordingly, Rowe was not entitled to leave under the FMLA, and The Hartford's denial of Rowe's additional leave time due to her failure to comply with its certification request was proper. *See Ridings*, 537 F.3d at 768-69 (upholding district court's granting of summary judgment against employee who failed to provide requested certification).

The next issue with respect to Rowe's FMLA interference claim is whether Rowe provided sufficient notice of her intent to take leave under 29 C.F.R. § 825.305. An employee provides adequate notice to the employer by stating "a qualifying reason for the needed leave"

such that the employer is put on notice that the FMLA may apply. 29 C.F.R. § 825.208(a)(2); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001). The employee is not required to "expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303(b). With regards to the contested August 27 to September 5, 2010, period, the only notice Rowe gave was to call The Hartford on August 26 (the final day of her leave time) and request an extension which, the Court notes, was extremely tardy under 29 C.F.R. § 825.303(a). There likely exists a genuine dispute as to whether this call constituted sufficient notice, but no further discussion is warranted because Rowe cannot make out her interference claim for the reasons stated above. Likewise, the fifth element for an interference claim (that U.S. Bank denied Rowe FMLA benefits to which she was entitled) merits little attention because it simply encompasses the prior analysis regarding whether Rowe was entitled to FMLA benefits.

For these reasons, the Court hereby grants summary judgment as to Rowe's claim of FMLA interference under 29 U.S.C. § 2615(a)(1), as Rowe has put forth no documentary evidence creating a genuine issue as to whether she was eligible for FMLA protections, was entitled to FMLA leave, or was denied a FMLA benefit by U.S. Bank to which she was entitled.

### B.     FMLA Retaliation

The Court next addresses Rowe's allegations that U.S. Bank retaliated against her in violation of 29 U.S.C. § 2615(a)(2). Unlike FMLA interference, which requires only the denial of FMLA entitlements, a retaliation charge requires proof of discriminatory or retaliatory intent. *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005). As with other forms of employment discrimination litigation, a plaintiff alleging retaliation may proceed under the direct

or indirect methods of proof. *Smith v. Hope School*, 560 F.3d 694, 702 (7th Cir. 2009). The Court will address each in turn.

Under the direct method, Rowe must show that she availed herself of a protected right under the FMLA; that she was adversely affected by an employment decision; and that there is a causal connection between the two actions. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008), *cert denied*, 555 U.S.1071 (2008). Only the alleged causal connection is at issue here, since U.S. Bank admits that Rowe availed herself of her protected FMLA rights and that Rowe was adversely affected by an employment decision. To prove a causal connection, Rowe must put forth either direct or circumstantial evidence that demonstrates that U.S. Bank intended to punish her for requesting or taking FMLA leave. *Smith*, 560 F.3d at 702; *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Direct evidence is evidence that would prove the employer's discrimination without reliance upon inference or presumption, and it typically involves an admission by the decision-maker that her actions were based upon the prohibited animus. *Caskey*, 535 F.3d at 593; *Buie*, 366 F.3d at 503. Rowe has put forth no evidence that remotely resembles direct evidence of retaliation in this case.

Nor is there circumstantial evidence that Rowe's adverse employment action was the result of her invocation of her FMLA rights. Circumstantial evidence may consist of a "convincing mosaic" of evidence that permits a jury to infer intentional discrimination by the decision-maker. *Ridings*, 537 F.3d at 771. The only such evidence Rowe has put forth is the fact that she was terminated the day before her FMLA leave was to begin (Rowe was terminated on July 19, 2010, and her leave was scheduled to start on July 20). But temporal proximity alone is insufficient to withstand summary judgment. *Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 751 (7th Cir. 2009); *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008). While

temporal proximity may suffice where the adverse action follows on the heels of the employer's discovery of the employee's disability, see *Buie*, 366 F.3d at 506-07, in this case U.S. Bank terminated Rowe nearly two months after Rowe first informed her supervisors that she intended to take medical leave. Rowe's misplaced reliance on the fact she was terminated prior to her schedule leave time does not create an issue of fact. *See id.* at 507 ("[T]emporal proximity is all that Buie relies on under the direct method, and it does not create an issue of fact."). Apart from timing, Rowe's only other proposed circumstantial evidence of discrimination is the fact that Melinda O'Melia suggested that Rowe shorten her leave. But O'Melia's suggestion was in response to Rowe's own complaint she did not want to be out for six weeks. This is insufficient to infer intentional discrimination on the part of U.S. Bank.

Having established that Rowe's claim fails under the direct method, the Court turns to the indirect method of proving FMLA retaliation. To proceed under the indirect method, Rowe must first make out a *prima facie* case for discrimination by showing that (1) she engaged in a statutorily protected activity, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 634-35 (7th Cir. 2009). The burden normally then shifts to the employer to produce a legitimate, non-retaliatory reason for its actions, id. at 635, but Rowe cannot make a *prima facie* showing so no burden shifting is necessary here. Only the second and fourth elements are in dispute, and they may be disposed of in short order.

First, all the evidence supports U.S. Bank's contention that Rowe failed to meet its legitimate expectations. Within one month of Rowe's transition to the position of Mortgage Opener, Regional Manager Polly Townsend issued Rowe a Performance Improvement Plan that

13

detailed a number of performance deficiencies and improvements Rowe needed to make. (During the time period that the PIP was issued, Rowe's immediate supervisor Melinda O'Melia was on maternity leave.) Rowe understood that her failure to immediately improve in the specified areas could result in her termination. When O'Melia returned to work in May, she quickly noticed additional problems with Rowe's work, and communicated with Rowe throughout June and July regarding the necessary improvements. In spite of numerous reminders and warnings from her supervisors, Rowe continued to fall short in her duties, and was notified of her termination on July 16, 2010. Rowe has put forth no evidence that disputes any of this. Notably, when questioned during her deposition, Rowe admitted that she had no basis to contest Townsend and O'Melia's characterizations of her performance deficiencies. *See* Rowe Dep. at 64-78, ECF No. 26-1. Rowe now argues that she was meeting U.S. Bank's legitimate expectations because her problems were part and parcel of being new to the position, and because another employee (who was not her supervisor) told her she was doing a good job. As usual, Rowe puts forth no documentary evidence that supports her self-serving arguments, and fails to in any way contest that her supervisors were correct in their assessments of her shortcomings as a Mortgage Opener.

  Rowe's claim that she was treated less favorably than a similarly situated employee likewise fails. The only such employee that Rowe identifies is Valerie Caulkins, who was a Mortgage Opener before Rowe, but Rowe fails to put forth any evidence that Caulkins was similarly situated. Caulkins could be considered similarly situated if she experienced similar performance problems as Rowe, did not take FMLA leave, and was not disciplined. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 508 (7th Cir. 2004) (pretext can be established by treatment of similarly-situated employees involved in misconduct of comparable seriousness); *see also*

*Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 635 (7th Cir. 2009) (plaintiff failed to identify a similarly situated employee because he could show that his employer retained another employee who did not take leave and was not terminated for poor performance). Similarly, Rowe's argument that Caulkins was treated more favorably is without merit. The only support for such an assertion is Rowe's claim that Caulkins received a temporary worker to help her with tasks but Rowe did not. Not only does Rowe fail to present any evidence of this, but it also does not account for Rowe's admission that she never asked her supervisors for assistance until about a week before she was terminated. Rowe essentially claims she was treated less favorably because her supervisors did not divine that she needed a temporary worker. *See* Rowe Dep. at 87 ("Q. Did you think they should provide [a temp] to you without you asking for one? A. Yes."). Accordingly, because Rowe cannot identify a similarly situated employee and does not contest that she failed to meet U.S. Bank's reasonable expectations, she cannot make out a *prima facie* case for FMLA retaliation under the indirect method.

For these reasons, even when viewing the evidence in the light most favorable to her, Rowe has put forth no evidence that raises a genuine issue that she was discriminated against for invoking her FMLA rights. The Court accordingly grants summary judgment in favor of U.S. Bank as to Rowe's FMLA retaliation claim.

### III.    Rowe's ADA Claims

The Court next addresses Rowe's claims under the Americans with Disabilities Act. Rowe's Complaint alleged that U.S. Bank discriminated and retaliated against her in violation of 42 U.S.C. § 12112 and § 12203. *See* ECF No. 1, at 10-12. Both of these claims must be dismissed due to Rowe's failure to exhaust her administrative remedies. It is well-established

that a plaintiff must exhaust her administrative remedies before bringing a cause of action for employment discrimination under Title VII. *See Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995). The ADA adopts Title VII's procedural prerequisites that a plaintiff (1) timely file a charge with the EEOC and (2) receive a right to sue letter from the EEOC prior to bringing suit in federal court. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(b), (e), and (f).[3] Here, Rowe did timely file a charge with the EEOC and received a right-to-sue letter. The problem is that her claim before the EEOC alleged that she was discriminated against on the basis of race, and her right-to-sue letter reflected as much. *See* ECF No. 26-2, at 3-7. The question for the Court is therefore whether Rowe's present ADA claim may stand in light of Rowe's pursuance of remedies for racial discrimination.

A plaintiff may not allege ADA claims in a lawsuit that were not included in her EEOC charge. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001); *see also Elliott v. Dedelow*, 115 Fed.Appx. 881, 883 (7th Cir. 2004) (plaintiff's ADA claims must reasonably relate to her allegations in prior EEOC charge). An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). This rule aims at encouraging conciliation between employer and employee without resort to the courts (although, in truth, few charges are actually conciliated), and puts the employer on notice as to the conduct about which the employee is aggrieved. *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A plaintiff may pursue a claim not explicitly included in her EEOC complaint only if her allegations fall within the scope of EEOC charges, i.e. the ADA

---

[3] There is some debate within this Circuit as to whether claims brought under Title II of the ADA require administrative exhaustion, see, e.g., *Canfield v. Isaacs*, 523 F.Supp.2d 885, 888 (N.D. Ind. 2007), but Rowe's claims arise under Titles I and V, so such a discussion is unnecessary here.

16

allegations are "like or reasonably related to" those contained in the charge. *Kersting*, 250 F.3d at 1118 (citing *Cheek*, 31 F.3d at 202). This inquiry boils down to whether the EEOC investigation "could reasonably be expected to grow from the original complaint." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 528 (7th Cir. 2003).

Here, the only investigation that could have grown from Rowe's EEOC charge was one based on race. Rowe admitted in her deposition that at the time of her EEOC complaint she believed that race had something to do with her termination because the previous Mortgage Opener (Valerie Caulkins) received a temporary assistant but Rowe did not. Rowe Dep. at 51-52, ECF No. 26-1. Rowe likewise concedes that nothing in her EEOC complaint stated that her termination was disability-related. She also admits that she never amended her complaint to include disability, in spite of receiving additional correspondence from the EEOC regarding her race-based complaint. *Id.* Viewing Rowe's charge as a whole, it contains no facts that would reasonably alert the EEOC or U.S. Bank to the possibility that she would allege that she was violated on the basis of having a disability. *See Ajayi*, 336 F.3d at 528. The body of Rowe's charge fails to even hint at disability-based discrimination or retaliation, such that the EEOC could not have known to look beyond Rowe's racial allegations as a basis for her discrimination claims. *See Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 477 (7th Cir. 1999). Even when viewed in the light most favorable to Rowe, her ADA claims are not "like or reasonably related to" the allegations in her EEOC charge, and therefore must be dismissed. *See Farlin v. Library Store, Inc.*, No. 08-cv-1194, 2010 WL 375236, at *4-5 (C.D. Ill. Jan. 25, 2010) (dismissing plaintiff's ADA claims where her EEOC complaint only alleged discrimination based on sex).

## CONCLUSION

The purpose of summary judgment is to separate the chaff from the wheat, that is, to determine which claims are so lacking in evidentiary support that, even when viewed in the light most favorable to the non-movant, they must be dismissed. In response to U.S. Bank's Motion for Summary Judgment, Rowe has put forth little more than subjective beliefs, self-serving arguments, and little in the way of documentary support. *See McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989) (subjective beliefs are insufficient to create a genuine issue of fact). Accordingly, for the reasons set forth above, the Court hereby grants U.S. Bank's Motion for Summary Judgment (ECF No. 25), and dismisses the remaining Counts I-V of Rowe's Complaint.

Entered this 1st day of August, 2013.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
